## SUPREME COURT.

JOHN COPE, Jr., administrator of JOHN McCRANEY and ELIZ-
ABETH P. McCRANEY agt. JULIAS T. ALDEN.

An agreement for the *loan of money*, made and consummated in this state by residents
thereof, by which the borrower is to give a bond accompanied by a mortgage up-
on lands in Wisconsin, no place of payment being specified, is governed by the
usury laws of New York, and not those of Wisconsin.

*Broome General Term, July,* 1867.
MASON, BALCOM, and BOARDMAN, *Justices.*
THIS case comes up for a second review (*see* 46 *Barb.*,
272) on a motion by the plaintiffs for a new trial on excep-
tions ordered to be heard in the first instance, at general
term.

The action was brought to recover surplus moneys on a
statutory foreclosure of a mortgage given by plaintiffs to de-
fendant, on the 31st day of January, 1860, on premises in
Oneonta, N. Y., for $800. The sale took place on the 10th
day of may, 1862, when the premises were bid off by de-
fendant for $2,300, leaving a surplus of $1,379.11. The
defendant seeks to retain the moneys by virtue of a mort-
gage given by plaintiffs to defendant, July 5, 1861, on the
same premises.

The plaintiffs, by way of reply, claim that the latter
mortgage was usurious, because a portion of the considera-
tion thereof, was a bond and another mortgage given to de-
fendant by plaintiff Elizabeth. That on, and prior, to the
22d day of November, 1858, all the parties were residents
of Oneonta, in this state, where plaintiff Elizabeth, made an
agreement with defendant, by the terms of which he was to
loan her $900, for which she was to give him a bonus of
$100 : that for the payment of the $1000, she was to give

him her bond for $1,000 and interest, and a mortgage upon certain lands in Grant county, Wisconsin. That the defendant at Oneonta, paid her $1,000 when she gave him back $100 and delivered him her bond and the mortgage agreed upon, neither of them specifying any place of payment.

It appeared on the trial, that the legal rate of interest in Wisconsin, in the absence of a special agreement between the parties, is seven *per cent*, but that twelve *per cent* may be reserved by special agreement. That where more than twelve *per cent* is reserved, the excess over twelve *per cent* only is forfeited and the agreement is valid and may be enforced for the principal and all interest not exceeding twelve *per cent*.

The court directed a verdict for the defendant on the ground that the contract was governed by the laws of Wisconsin and was not usurious.

L. L. BUNDY, *attorney*.
N. C. MOAK, *of counsel for plaintiffs*.
STURGES and COUNTRYMAN, *for defendant*.

*By the court*, MASON J. The only important question in this case, is whether the bond and mortgage executed by the plaintiff Elizabeth McCraney, to the defendant on the 22d day of November, 1858, for $1,000 was usurious or not. At the time of the execution of the said bond and mortgage, both Mrs. McCraney and the defendant resided at Oneonta, in the county of Otsego, in this state, where both the agreements to loan the money were made, the bond and mortgage were executed and delivered, and the money was paid thereon. The mortgage was upon lands in Grant county, in the state of Wisconsin. Neither the bond nor the mortgage designated any place of payment. The agreement between the parties was, at the time, that the plaintiff Mrs. McCraney, should give to the defendant a bond and mortgage on these lands in Wisconcin for $1,000, that the

defendant should advance to her $900, and the $100 should be given as a bonus for the loan, which was done accordingly. The question presented for our decision is, whether this is a contract to be governed by the laws of the state of New York or Wisconsin, and I entertain no dcubt but that it must be regarded as a New York contract, where the *lex loci contractus* controls.

Every concomitant to make it a New York contract seems to exist in the case. The parties reside here, the loan was made here, the securities were executed here, the money is certainly payable here where the parties reside.

Upon such a state of facts I am not able to discover any principle of law upon which this can be pronounced a Wisconsin contract, and no adjudged case has been referred to upon the argument, nor have I been able to find any which would hold it such. On the contrary the very reverse was held by the supreme court of the United States in the case of *DeWolf* agt. *Johnson*, (10 *Wheat. R.*, 383) where it is expressly decided that the *lex loci contractus* must grovern in a question of usury although by the terms of the argreement the debt was to be secured by a mortgage on real property in another state. The case is cited with approbation in the case of *Anderson* agt. *Pond*, (13 *Peters R.*, 78.) The case of *Newman* agt. *Kerson* (10 *Wisconsin R.*, 333) is directly in point and decides the very question presented in this case. The suit was brought in that case to foreclose a mortgage in Wisconsin; the parties both resided in New York where the loan was made and the bond and mortgage was executed on lands in Wisconsin, and chief Justice Dixson in giving the opinion of the court says: "We have no doubt that this contract is to be governed by the laws of New York," (*see p.* 340). He adds: "In this case the parties all reside in New York, the loan was made there, was to be repaid there, and the laws of that state must govern the contract as to its validity and effect," (*see p.* 344.)

The principle of these cases is affirmed by Chancellor KENT in his Commentaries. (3 *Kent's Com.*, 460, 3*d ed.*) He says the general doctrine is that the law of the place where the contract is made is to determine the rate of interest, when the contract gives, specifically, interest, and this will be the case though the loan be secured by a mortgage on lands in another state, unless there are circumstances to show that the parties had in view the laws of the latter state it respect to interest. And Judge STORY affirms the rule to be the same. He says, whether a contract is usurious or not depends not upon the rate of interest allowed, but upon the validity of that interest in the country where the contract was made and is to be executed, (*Story's Conflict of Laws*, § 292, 5*th ed.*), and he adds, "in cases of this sort it will make no difference that the due performance of the contract is secured on other security, situated in another country where the interest is lower." (§ 293.) In section 287 he declares the rule to be that where a loan is made in one state and security is to be given therefor in another state by way of mortgage, that the law of the place where the loan is made is to govern, for the taking of a foreign security does not necessarily alter the locality of the contract. Taking security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is given.

The legal fulfilment of a contract of loan on the part of the bondsman is the repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrows, unless another place of payment be expressly designated by the contract, (*Story' Con. Laws*, § 287), which is a mere reiteration of what was said by the court in *De Wolf* agt. *Johnson* (10 *Wheat. R.*, 367). This doctrine has never been overruled in any case which I have been able to find. The case of *Chapman* agt. *Robertson* (6 *Paige R.*, 625), is relied on by the defendant in this case, but in that case the

contract was made between a citizen in this state and a British subject in England. The bond and mortgage were executed by Robertson here, recorded here and forwarded to Chapman in England, who advanced the money upon them by depositing the same with Robertson's banker for his use. The chancellor holds that as the payee resided in England at the time of the making of the contract, the bond and mortgage naming no place of payment, the legal construction of the contract is that the money must be paid where the obligee resides, &c. Whatever may be thought of this case, and its soundness has been questioned by Chancellor KENT in his Commentaries, and by Judge STORY, it decides nothing in the case before us. It is evident from the opinion of Chancellor WALWORTH in the case that he excepts this case, and indeed seems to hold this contract usurious. After citing *Stapleton* agt. *Conway* (3 *Atk. R.*, 727), where Lord HARDWICK held that a mortgage upon land in the colonies, if executed in England and connected with a bond or other personal covenant for the payment of more than five *per cent* interest was usurious and void, &c. Chancellor WALWORTH says on page 632, " doubts might well exist as to the validity of loans made in England upon such securities where both parties resided there, especially if the money was not loaned for the purpose of being used in the colony where the mortgaged premises were situated, as the giving of such a security might be a very convenient mode of evading the statute of usury."

This meets the very case before us. The case of *Balme* agt. *Wombough*, (38 *Barb., R.*, 352), relied upon by the defendant's counsel, decides nothing in the case at bar. All that case decides is, that promissory notes made and dated in Minnesota for money there loaned and advanced payable at a bank in the state of NewYork, with interest at 25½ *per cent* per annum, and secured by mortgage, on land in Minnesota, will not be declared void by the courts of this state or directed to be surrendered and canceled. The case holds

just what has been decided in a good many other cases, that the general rule, that the validity of the contract is to be decided by the laws of the place, where the contract is to be performed, does not apply to cases involving the rate of interest where it is stipulated in the contract at the place where the loan is made in conformity with the law of the place, that a higher rate of interest shall be paid than is allowed by the place of performance, but that the *lex loci contractus* governs (1 *Paige R.*, 220; 20 *Martin's Lon. R.*, 1; 6 *Paige R.*, 627 ; 7 *Paige*, 632 ; 22 *Barb. R.*, 121 ; 20 *Eng. Law and Eq.*, 555 ; 2 *Kent's Com.* 460; 2 *Parsons on Contracts*, 95, *also note E*). And it is this class of cases upon which the defendant's counsel seems mainly to rely in this case. It is not necessary to consider the soundness of the rule laid down in these cases, as they decide no principle involved in the case under consideration; but as I understand the case of *Lee* agt. *Sellick*, (33 *N. Y. R.*, 615) the court of appeals there decides, that the liability of a maker on a promissory note executed in New York, and payable in Illinois is controlled by the laws of Illinois, the state in which his engagement is to be performed, and whether that court will allow the symmetry of the law to be marred by making the question of usury in a case like the present, an exception to this certainly general rule, remains to be seen.

The doctrine laid down in 9 *Allen* (*Mass.*) *R.*, 78, and many other cases holding that the laws of the state where the lands are situated must control as to the form of the mortgage or deed, its manner of execution and acknowledgement, &c., have nothing to do with the question in this case. It is true that in all these respects, the law of the state where the lands are situated must control, but that does not touch the question of usury in the case. It is said that this contract was entered into by these parties upon the understanding and with the intent to bring it under the laws of Wisconsin and not of New York. I have sought in vain for any evidence of this in the case. They make the con

tract here in this state, the parties reside here, the money is advanced here, the bond and mortgage are executed and delivered here, the payment was to be paid here, and the whole thing was done and to be done under the laws of this state, excepting the mortgage as a security for the loan was upon lands in Wisconsin, and had, of course, to be recorded there. As a general proposition it cannot be denied that contracts as to their validity, are to be tested by the laws of the state where they are made, and are to be executed, and it was held in the case of *Jewett* agt. *Wright*, (30 *N. Y. R.*, 259) that where a note made and dated in this state, and payable at a bank here, was negotiated in another state, that the laws of New York are to control as to the defense of usury.

This is upon the ground that the law regards the contract as coming under and consequently governed by the law of the state. In the case at bar it seems to me very clear that the court should have held this bond and mortgage controlled by the laws of this state, and consequently usurious, without submitting any fact to the jury. And in any view which can be taken of the case, upon the facts of the case, it is certainly usurious if made to avoid the usury laws of this state. (*Chapman* agt. *Robertson*, 6 *Paige R.*, 632.)

If there was any doubt upon this subject, it should have been submitted to the jury to determine, but I do not think the case upon the undisputed facts can be brought under the laws of Wisconsin, but must be held to be a New York contract.

As the $1,000 mortgage went into and formed a part of the consideration of the $1,669 mortgage the latter is also usurious as is held in all the cases. (*Peirce* agt. *The Lyons Bank*, 33 *N. Y. R.*, 55; *Jackson* agt. *Nichols*, 1 *Seld. R.*, 178; 35 *Barb. R.*, 96; 20 *John. R.*, 285; 6 *Cow. R.*, 647; 21 *Wend. R.*, 103, *and the mortgage is void as to the whole*, 17 *Barb. R.*, 397; 21 *Barb.*, 361.) If I am right in the views above expressed, it follows that the defendant cannot

hold these surplus moneys on this mortgage, for they being usurious gave him no valid lien upon the premises.

A new trial must be granted, costs to abide the event of the action.*

*The case is now pending in the court of appeals, on an appeal from the decision of the supreme court after the third trial.